ETTORE BISORDI *v.* A. BARBARESI & SON, INC.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 8—decided October 10, 1945.

*Joseph G. Shapiro,* for the appellant (defendant).

*Charles S. Friedman,* of the New York bar, with whom was *Abraham S. Ullman,* for the appellee (plaintiff).

ELLS, J. The plaintiff brought this action in five counts to recover balances alleged to be due for mill-work materials furnished to the defendant, a general contractor engaged in building houses for the Federal Housing Authority. The appeal concerns only the judgment on the fifth count, in which it is alleged that the parties entered into a contract whereby the plain-

tiff was to furnish all the millwork required for housing projects at Southington and Stratford, that the plaintiff performed all the conditions of the contract, and that a balance of $21,734.06 is due and unpaid. The trial court entered judgment for approximately this amount, with interest, and the defendant has appealed.

The defendant in its answer admitted that the parties entered into the contract. The principal issue is whether it was based upon price lists submitted by the plaintiff sometime prior to the execution of the written agreement. If the lists are not a part of the contract, the court's conclusion to the effect that there was no agreement establishing fixed prices for the materials furnished is correct.

The material facts found by the trial court, with the corrections to which the defendant is entitled, may be thus summarized:

The plaintiff was furnishing, under lump sum contracts with the defendant, all the millwork material required for houses being built by the latter for New Britain and Plainville projects. In March, 1943, the defendant began negotiations with the federal authorities relative to proposed housing projects at Southington and Stratford. Wholesalers and manufacturers would not sell the necessary materials to the defendant in carload lots to be shipped to the nearest railroad station. Late in March, the defendant discussed with the plaintiff the prospect of buying through him as much millwork material as possible, in carload lots to be shipped direct to the job site, thus making the plaintiff a purchasing agent so that the defendant could secure the benefit of wholesale prices. The discussions at that time contemplated that none of the materials would be handled, processed or delivered by the plaintiff and that, if the defendant should agree to buy through the plaintiff all the necessary materials, the

plaintiff would receive 10 per cent of the cost for acting as the purchasing medium.

In the latter part of April the defendant asked the plaintiff to make up lists of the millwork requirements for the two projects, with available current quotations for carload lots to be shipped to the job sites. The lists were made up and the parties discussed them and made notations in pencil of the page totals. The aggregate amount was $67,621.01.

On or about May 11, the defendant informed the plaintiff that it had become too late to purchase carload quantities to be shipped to the job sites because of the uncertainty of the time of arrival. The proposal to purchase all the material in carload lots was abandoned, and on May 11 an oral agreement was made which was confirmed on May 22 by a letter, admitted by both parties to be the existing contract. It was prepared by the defendant, and reads as follows:

"This will confirm our verbal order to purchase all the Exterior and Interior Millwork required for both the Southington Job Conn. 6161 and 6163 and for the job at Stratford, Conn. 6062 and 6063.

"This material is to be purchased by you at the lowest possible wholesale price after quotations from several sources are received. We are to receive written quotations as soon as possible after you have placed the order. All materials that you pay for on a C.O.D. basis, we will reimburse you immediately upon presentation of proper receipts or cancelled checks.

"All material which is shipped on carload quotations, can be billed direct to us or to you as the mill desires. Careful records are to be kept of purchases. For any material that you purchase, you are to be paid monthly, the actual cost plus 5%. When the total order is purchased, you are to receive an additional

5%, making a total commission of 10% on the cost of all material purchased for the above jobs. Any trucking by you is to be charged to us at the rate of $25.00 per day.

"We anticipate that the total amount of material required for these projects is $65,000.00.

"Please see that this material is ordered and delivered as soon as possible, so that there will be no delay in the progress of these two jobs."

The defendant's main claim is that the price lists previously prepared constituted a part of this contract and set a limit on the costs to be charged, but that the agreement obligated the plaintiff to procure the designated articles at the lowest possible wholesale prices. If that was the intention, the president of the defendant corporation, who drew the contract, could easily have stated that for all materials purchased the defendant would pay the prices stated in the lists or the actual cost, whichever was lower. But the agreement actually said: "This material is to be purchased by you at the lowest possible wholesale price after quotations from several sources are received. We are to receive written quotations as soon as possible after you have placed the order." This is strange language indeed if it was intended to cover prices agreed upon at some previous time.

Furthermore, the lists upon which the defendant relies were based on carload quantities shipped directly to the job sites. They did not contemplate that much necessary material must be processed, machined and delivered by the plaintiff. That the defendant did not understand or believe that these lists constituted the price basis of the contract it drew is also indicated by the further words: "All material which is shipped on carload quotations, can be billed direct to us or to you as the mill desires. . . . Any trucking by

you is to be charged to us at the rate of $25.00 per day." The court further found, upon sufficient evidence, that only a relatively small portion of the materials were purchased in carload lots, and that, with these exceptions, the materials furnished consisted of articles purchased by the plaintiff and processed by him for the defendant's specific purposes, articles which the plaintiff had on hand which he processed for the defendant's specific purposes, and articles purchased and delivered to the plaintiff's yard which he reloaded on his own truck and delivered to the job sites. This finding was not attacked. It is also found on sufficient evidence that pursuant to the contract the plaintiff rendered detailed and itemized bills and requisitions each month, that during the progress of the work the defendant made no complaint regarding the prices charged in these bills, and that no complaint was then made that the charges were not the plaintiff's actual costs.

The defendant claims that the statement made in the contract, "We anticipate that the total amount of material required for these projects is $65,000.00," is of great significance, and ties the agreement to the lists. The court concluded that this language was not intended to, and did not, constitute any limitation or fixation of the approximate cost of materials for these two jobs. In view of the language of the contract, and the facts found by the court, we cannot upset this conclusion. Another argument of the defendant is based on the fact that certain carload shipments were charged to it at prices quoted in the list; but there is little force to its claim in this regard in view of the court's finding, which must stand, to the effect that the quotations were adopted only after the plaintiff had verified the fact that the materials could be obtained at the prices stated. We need only say that the

finding reasonably supports the court's conclusion that the prices to be charged were not fixed by the lists.

The defendant in its brief appears to rely principally upon the claim that, if the court's theory of the meaning of the contract is correct, there are substantial errors in the calculations upon which the amount of the judgment is based. The statement of the claims of law made by the defendant, as contained in the finding, fails to meet the requirements of the rules. Practice Book, §§ 157, 363. The assignment of errors was no better. We are under no necessity to consider these claims, and we examine them only so far as is necessary to see that there has been no substantial denial of justice. *Feeney* v. *Perelmutter*, 128 Conn. 572, 24 Atl. (2d) 487. Such of the claimed errors as merit this consideration relate to items claimed never to have been actually delivered, duplication of items, and errors in arithmetic. Space limitations forbid a detailed discussion of the large number of items involved. The majority of the claims are based on the contention that the defendant failed to receive certain materials charged in the bills. Both parties relied on secondary evidence. While the defendant claimed that certain materials were not delivered, it produced no primary evidence to that effect; it relied upon copies of documents, the originals of which were not in evidence, unexplained alteration in delivery slips, and testimony essentially hearsay in its nature. The court could and did properly give greater credence to the bills sent by the plaintiff to the defendant for the materials, which were in large part paid, and as to which no controversy arose until about the time the contract was terminated.

There is no evidence reasonably supporting the claims of duplication. The claims are largely based on the contention that the same quantity of an identical item was delivered and charged for on two separate

dates. Standing alone, this proves nothing. Two claims made involve delivery slips which are missing from the exhibits. As to another claim, there is a difference in the amount of the charge of the items there in question.

There are at most two claims as to mathematical errors. One is that a charge was made for twenty-seven seats at 50 cents, $135, whereas the obvious total was $13.50. The finding, read in the light of the exhibits, shows that this error, amounting to $121.50, entered directly into the judgment. The other claim is for a mathematical error combined with a claim of partial nondelivery. There is a mistake, although involving only $7.29.

The trial court found that certain labor costs paid by the plaintiff for converting raw materials into finished items for the defendant's special purposes were part of the plaintiff's actual costs within the meaning of the contract. There were three types of charges of this general nature: for "handling" materials, for "shop labor," and for shop drawing and blueprinting. The defendant excepts to them. It does not appear whether the charges for "handling" were sums paid by the plaintiff to others or were, as the defendant assumes, claims for services he himself performed. The contract contemplated only the purchase of material from others, but the plaintiff himself furnished much material and, to a considerable extent, milled it, and also the material bought from others; the defendant makes no claim that it is not obligated to pay for such material; and the charges for shop labor and drawing and printing were apparently incurred in connection with the milling. The circumstances upon which the plaintiff's claims to recover these items must necessarily be based are not found, nor was the trial court asked to find them. Pursuant to the contract, the

plaintiff furnished to the defendant detailed and itemized bills and requisitions each month and during the course of the jobs; the charges in question were plainly made upon the bills; the defendant made substantial payments upon them, without any complaint concerning the charges until near the end of the job, when the controversy arose between the parties. The trial court was justified in holding that they represented sums justly due to the plaintiff from the defendant.

The remaining claim is that as to the Stratford project the defendant is entitled to a credit of $806.90 paid to the plaintiff and not credited by him. The court could reasonably find to the contrary.

The finding states that the trial court found that the plaintiff was entitled to recover for these two jobs the principal sum of $21,675.11, with interest from July 28, 1944. The errors we have pointed out require that $128.79 be deducted from the principal sum, and that the interest be recomputed. We note, also, that, while the judgment file gives judgment for the plaintiff to recover $29,120.27, the finding contains a precise statement of the amount due, which is $29,110.12.

There is error only in the amount of damages awarded. The case is remanded with direction to enter judgment for the plaintiff to recover the amount found to be due at the trial except as corrected to accord with this opinion.

In this opinion the other judges concurred.